# EXHIBIT 1

Final Arbitration Award

# EXHIBIT 1


AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| HYFLO LIMITED PARTNERSHIP,<br><br>Claimant,<br><br>v.<br><br>WELLS FARGO BANK NATIONAL ASSOCIATION,<br><br>Respondent. | Case No. 01-18-0004-6821<br><br>**AMENDED FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECISION** |

The undersigned Arbitrator, having been duly appointed by the American Arbitration Association, hereby issues the following amended findings of fact, conclusions of law, and decision in the above-captioned case. This Decision replaces the Findings of Fact, Conclusions of Law and Decision issued on October 9, 2019, in order to consider the response filed on October 11, 2019 by Claimant.

Hyflo commenced arbitration against Wells Fargo, N.A. ("Wells Fargo") on December 20, 2018, setting forth claims for breach of contract, breach of fiduciary duty, and for negligence (the "Demand"). The arbitration hearing in this commercial dispute was held on August 26, 2019. The Claimant, Hyflo Limited Partnership ("Hyflo"), appeared and was represented by Brian C. Whitaker, Esq. and Ryan B. Davis, Esq. of the firm Erickson and Whitaker PC. The Respondent, Wells Fargo, appeared and was represented by Kelly H. Dove, Esq. and Charles E. Gianelloni, Esq. of the firm Snell and Wilmer L.L.P.

At the arbitration hearing, the parties presented evidence through multiple exhibits and through live testimony. The exhibits included joint exhibits agreed upon by the parties prior to the hearing as well as separate exhibits identified by each party prior to the hearing. Claimant called the following live witnesses:

1. Allan Ruskin, in his capacity as representative for Claimant ('Ruskin"); and
2. Mark Webster (expert).

Respondent called the following live witnesses:

1. Connie Kotzman, in her capacity as representative for Respondent; and

1

2.   Don Coker (expert).

## I.   FINDINGS OF FACT

**A.   ACH Transaction Participants and Roles in this Case**

1. There are typically five participants in an ACH transaction: (1) the originating company or individual ("Originator"); (2) the Originating Depository Financial Institution ("ODFI"); (3) the ACH Operator; (4) the Receiving Depository Financial Institution ("RDFI"); and (5) the receiving company or individual ("Receiver").

2. The Originator for the subject transactions was Western Union Business Solutions ("WUBS"), purportedly on behalf of a company called Black Sand Construction, which the parties agree fraudulently initiated ACH transfers through WUBS.

3. WUBS then sent the debit requests to Wells Fargo as the ODFI. A financial institution is an ODFI if it agrees to originate ACH entries at the request of its customers. National Automated Clearing House Association ("NACHA") § 8.66.

4. After receiving WUBS' (the originator's) debit requests, Wells Fargo (the ODFI) sent requests for debit transfers to the ACH, who processed the requests and forwarded them to Hyflo's bank, Wells Fargo as the RDFI. NACHA § 8.83.

5. A Receiver is the consumer whose account is accessed. NACHA §8.81. Hyflo is the Receiver.

6. To summarize, Wells Fargo (as the RDFI) accepted Wells Fargo's (as the ODFI) debit requests and debited Hyflo's (the receiver's) account consistent with the direction from WUBS (the Originator).

**B.   The Account and Account Agreement**

7. Hyflo is a business that maintained a Business Market Rate Savings Account (the "Account") with Wells Fargo.

8. Account statements were mailed to Hyflo on a monthly basis, but Hyflo had access to its account online at all times.

9. Notifications and alerts were also available to Hyflo to immediately alert Hyflo of a wide variety of account transactions, but Hyflo did not opt to utilize them.

2

4847-7683-8568v1

10. Because Hyflo is a business that maintained a business account, Hyflo was required to report any unauthorized business-to-business ACH transaction no later than the following business day to ensure recovery of the funds.

11. Hyflo's reporting requirements were indicated both in Hyflo's Deposit Account Agreement ("Account Agreement") and as a "call-out" notice in certain written bank statements.

12. The Account Agreement includes a section concerning electronic funds transfers, of which ACH transactions are a specific subset. The Account Agreement first speaks to general "funds transfer services."

13. Under the subsection "Duty to report unauthorized or erroneous funds transfers," customers are required to "exercise ordinary care to determine whether a funds transfer to or from [their] account was either not authorized or inaccurate."

14. Additionally, customers agree to notify the bank "within a reasonable time not exceeding 14 days," pursuant to the terms of the Account Agreement, Ruskin had a duty to report unauthorized or erroneous funds transfers "within 14 days to be entitled to a refund from us."

15. The following paragraph of the Account Agreement specifically addresses ACH transactions. Regarding business accounts, it provides:

> **Business Accounts Only**: Under the ACH Rules, the Bank can return any non-consumer ACH debit entry as unauthorized until midnight of the business day following the business day the Bank posts the entry to your account. In order for the Bank to meet this deadline, you are required to notify us to return any non-consumer ACH debit entry as unauthorized by the cutoff time.... **The cutoff time is currently 3:00 PM Central Time. If you do not notify us in a timely manner of the unauthorized non-consumer ACH debit entry, we will not be able to return it without the cooperation and agreement of the originating bank and the originator of the debit entry. Any other effort to recover the funds must occur solely between you and the originator of the entry.**

(emphasis supplied).)

16. Hyflo's August and September 2017 Statements of Account both included the following call-out, alerting business customers regarding this policy:

> "Business to Business ACH." This entry description may appear on your statements and online banking transaction histories.. .Under ACH rules, a Business to Business ACH debit entry has a return time frame of one business day from the date the entry posted to your account. In order for the Bank to meet this deadline, you are required to notify us to return any Business to Business ACH debit entry as unauthorized by the cutoff time which is currently 3:00 PM Central Time. If

3

> you do not notify us within one business day from the date the unauthorized entry is posted to your account, we will not be able to return it without the cooperation and agreement of the originating bank and the originator of the debit entry. **Any other effort to recover the funds must occur solely between you and the originator of the entry.**

(emphasis supplied).

17. Under a section of the Account Agreement entitled "Rules of funds transfer systems," the Account Agreement states: "Funds transfers to or from your account will be governed by the rules of any funds transfer system through which the transfers are made, including . . . the National Automated Clearing House Association. . . .

18. Furthermore, according to the Account Agreement, "In addition to the other terms in the Agreement. . . . [Hyflo] authorize[d] any Originating Depository Financial Institution (ODFI) to initiate, pursuant to ACH Operating Rules, ACH debit entries to your account for presentment or re-presentment of items written or authorized by you."

19. Hyflo's owner and representative, Allan Ruskin, did not read the ACH language in the Account Agreement prior to the arbitration hearing, nor did Mr. Ruskin read the call-out in Hyflo's Statements of Account prior to the arbitration hearing.

C.      **The Unauthorized Transactions**

20. The Account was used exclusively for recurring, internal transfers between the Savings Account and the Checking Account and no authorized ACH debits or credits to the Savings Account occurred during the entirety of the life of the Savings Account.

21. Between August 10, 2018 and August 21, 2018, the Account was debited five times, for a total amount of $150,010.53.

22. On August 10, 2018, a total of $0.53 was debited from the Account without Ruskin's knowledge or authorization.

23. On August 14, 2018, a total of $35,015.00 was debited from the Account without Ruskin's knowledge or authorization.

24. On August 15, 2018, a total of $14,965.00 was debited from the Account without Ruskin's knowledge or authorization.

4

4847-7683-8568v1

25. Immediately subsequent, on August 15, 2018, a total of $50,015.00 was debited from the Account without Ruskin's knowledge or authorization.

26. On August 16, 2018, a total of $0.53 was credited to the Account without Ruskin's knowledge or authorization.

27. On August 21, 2018, a total of $50,015.00 was debited from the Account without Ruskin's knowledge or authorization.

28. In total, between August 10, 2018 and August 21, 2018, a total of $150,010.00 was removed from the Account without Ruskin's knowledge or authorization.

29. Each of the August 2018 transfers was unauthorized, a fact stipulated to by the parties at the August 26, 2019 Arbitration Hearing.

30. Hyflo reported the unauthorized transactions to Wells Fargo on August 27, 2018, which is 17 days after the first transaction, and 6 days after the last.

31. Hyflo's notification was untimely under the Account Agreement and as a result, Wells Fargo was unable to process a return as of right and recover the funds for their return to Hyflo.

32. Wells Fargo notified Hyflo of this fact and advised Hyflo to pursue recovery directly from WUBS.

33. On August 29, 2018, Wells Fargo, in its capacity as RDFI, requested a return of the stolen funds from Wells Fargo, in its capacity as ODFI.

34. On August 30, 2018, Wells Fargo, in its capacity as RDFI, requested evidence of authorizations for the August transaction from Wells Fargo, in its capacity as ODFI.

35. On August 30, 2018, Wells Fargo, in its capacity as RDFI, sent a letter to Hyflo denying Hyflo's August 27, 2018 request for a refund and insisting "too much time passed before you notified us on 08/27/2018 about the charge [sic]."

36. The August 30, 2018 letter provided Ruskin an alleged telephone number for WUBS and advised him to contact them for reimbursement.

37. Ruskin immediately telephoned the number provided by Wells Fargo but was informed via a pre-recorded message that the number had been disconnected.

5

4847-7683-8568v1

38. On September 7, 2018, Ruskin wrote to Wells Fargo, via counsel, requesting "legal justification" for its denial of Hyflo's refund request and asking for a copy of any "authority" Wells Fargo had to initiate the August funds transfers.

39. Wells Fargo did not respond to Ruskin's September 7, 2018 letter.

40. On September 17 or September 18, 2018, Wells Fargo marked Hyflo's case as "closed."

41. On December 20, 2018, Hyflo filed its Demand.

42. Wells Fargo disclosed its status as both an ODFI and an RDFI to Ruskin on July 2, 2019, more than six (6) months subsequent to Hyflo submitting its Demand, and only after first denying its position as ODFI on June 20, 2019.

43. Wells Fargo has failed to provide evidence to Hyflo of any authorizations for the August transfers, and claims never to have received any from WUBS, in spite of making a request.

44. Wells Fargo has refused to provide Hyflo a copy of any Origination Agreement between itself and WUBS, but in doing so, has made no claims to privilege.

## II. CONCLUSIONS OF LAW

A. **Wells Fargo is Not Liable Under Hyflo's Breach of Contract Claims**

45. The applicability, validity, and authenticity of the Account Agreement and that a valid contract existed between the parties in the Account Agreement were not disputed by the parties.

46. Hyflo's interpretation of the Account Agreement is contrary to its plain language and to well-established canons of interpretation.

47. Pursuant to the terms of the Account Agreement, the "[l]aws of the state where you opened your account" govern the Account. The specific business ACH subsection qualifies the general subsection regarding general funds transfers. In interpreting a contract, "[a] specific provision will qualify the meaning of a more general provision." *Shelton v. Shelton*, 119 Nev. 492, 497, 78 P.3d 507, 510 (2003). The "duty to report" subsection applies generally to funds

6

transfers of any type. However, the business ACH transaction subsection specifically relates to business ACH transactions and therefore imposes a next-business-day notice requirement for those transactions.

48. UCC Article 4A has been adopted in Nevada as NRS Chapter 104A, and therefore governs the Account.

49. There is also support in UCC4 for the bank's ability to fix the time required for a customer to notify the bank of an unauthorized ACH transaction. *See* NRS 104A.4204(2) ("Reasonable time under subsection 1 may be fixed by agreement . . .").

50. UCC Article 4A sets forth the rules for refunds from a bank to its customer, requiring a bank to "refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce payment and shall pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund." NRS 104A.204(1).

51. A "basic rule" of contract interpretation is that "[e]very word must be given effect if at all possible." *Musser v. Bank of Am.*, 114 Nev. 945, 949, 964 P.2d 51, 54 (1998). "A court should not interpret a contract so as to make meaningless its provisions." *Id.* If Hyflo's theory were correct, it would render the last sentence of the business ACH subsection meaningless, which states that the only other effort to "recover the funds" must occur solely between Hyflo and the originator. (Exhibit 1, 57.)

52. An implied covenant of good faith and fair dealing exists under every contract or agreement in Nevada. *Klein v. Freedom Strategic Partners, LLC*, 595 F.Supp.2d 1152, 1161, 2009 U.S. Dist. LEXIS 10725. p 23 (D. Nev. 2009). The Arbitrator finds that a contractual breach of the duty of good faith was not proven.

53. Wells Fargo is not liable to Hyflo on its claim for breach of the Account Agreement.

**B.     Wells Fargo is Not Liable Under Hyflo's NACHA Rules Violation Claim**

54. Hyflo claimed at the arbitration hearing that Wells Fargo, as ODFI, breached its warranty against Wells Fargo, as RDFI, under the NACHA Rules.

55. Hyflo may not directly enforce the NACHA Rules, which do not in any respect create a private right of action or remedy for a receiver such as Hyflo.

56. As such, Hyflo does not have standing to assert a breach of warranty claim under the NACHA Rules or to directly enforce the Rules.

57. The Account Agreement's "governed by" language does not expand Hyflo's rights. Rather, with the language, Wells Fargo informed Hyflo that it complies with the rules governing funds transfer systems.

58. Accordingly, the Account Agreement's reference to the NACHA Rules did not allow Hyflo to directly enforce NACHA Rules by virtue of a contract action.

59. Hyflo does not attempt to enforce the NACHA Rules against Wells Fargo, but instead seeks to enforce the Account Agreement against Wells Fargo, which incorporates the NACHA Rules.

60. Incorporating the NACHA Rules ultimately does not help Hyflo because that would include the NACHA Rule § 1.9, which explicitly provides that "[nothing in these rules is intended to, and nothing in these rules shall be implied to, give any legal or equitable right, remedy, or claim to other entity, including to any ... Receiver..."

61. Because the ODFI did not agree to Wells Fargo's request, which the NACHA Rules plainly permit, Hyflo's only recourse was to seek recovery from the Originator in accordance with the Account Agreement. (Exhibit 1, 57.)

62. If Hyflo had timely reported the unauthorized CCD transfers in accordance with the Account Agreement and the NACHA Rules, then Wells Fargo, as the RDFI, could have employed Return Code R29 and had the funds returned.

63. However, Hyflo failed to timely report the unauthorized CCD entries under both the Account Agreement and the NACHA Rules. As a result, Hyflo is not entitled to a recredit from Wells Fargo.

64. Wells Fargo is not liable to Hyflo on its NACHA Rules violation claim.

C. **Wells Fargo is Not Liable to Hyflo on its Breach of Fiduciary Duty Claim**

65. Wells Fargo does not owe a fiduciary duty to account holders. *See, e.g., Bank of*

1  *Marin v. England*, 385 U.S. 99, 101 (1966); *Dunham Tr. Co. v. Wells Fargo Bank, N.A.*, No.
2  3:18-cv-00181-LRH-WGC, 2019 WL 489095, at *5 (D. Nev. Feb. 7, 2019).

3  66.  Additionally, Hyflo's expert correctly acknowledged at the arbitration hearing that
4  Wells Fargo did not owe Hyflo a fiduciary duty.

5  67.  Wells Fargo is not liable to Hyflo on its breach of fiduciary claim.

**D.  Wells Fargo is Not Liable to Hyflo on its Negligence Claim**

68.  Article 4A of the Uniform Commercial Code is "intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article." NRS 104A.4102, UCC cmt.

69.  In other words, because Article 4A establishes the standards of care and limitations on liability for wire transfers, common law claims that alter Article 4A's standards and limitations are not actionable.

70.  The negligence claim cannot survive here because a bank's ordinary duty of care to a depositor is derived from the Account Agreement. *See Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 472, 479 (1996).

71.  "A bank's basic duty of care—to act with reasonable care in its transactions with its customers—arises out of the bank's contract with its customer." *Rodriguez v. Bank of The West*, 162 Cal. App. 4th 454, 460 (2008). *See also, Bank of Marin v. England*, 385 U.S. 99, 101 (1966) (holding that the "relationship of bank and depositor is that of debtor and creditor, founded upon contract").

72.  Hyflo's negligence claim also fails for the additional and independent reason that it is barred by the economic loss doctrine. *Terracon Consultants Western, Inc. v. Mandalay Resort Group*, 125 Nev. 66, 86-87 206 P.3d 81 (2009).

**E.  Each Party to Pay Its Own Attorney Fees and Costs**

73.  The Account Agreement contains an attorney fees and costs clause that states, in pertinent part, that "each party will pay its own attorney, expert, and witness fees." (Exhibit 1, 5.)

1 | Therefore, there will be no award of fees or expert costs.

2 |     74.    The costs of arbitration are addressed in the Account Agreement on page 8. The applicable provision states that the "arbitrator will award costs and expenses of the arbitration proceeding." However, this clause is not modified by the customary terms "to the prevailing party." The parties shall each bear their own costs of the arbitration.

Accordingly,

The Arbitrator awards in favor of Wells Fargo and against Hyflo as follows:

    A.    Wells Fargo prevails against Hyflo on all of Hyflo's claims against Wells Fargo; and

    B.    Wells Fargo and Hyflo shall each bear their own attorney fees and costs.

DATED: October 16, 2019.

*/s/ Rew R. Goodenow*

Rew R. Goodenow, Arbitrator

10